Commonwealth *v.* Beddick, Appellant.

222

Argued November 17, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

Indictment charging defendant with perjury. Before McKAY, J., specially presiding.

Verdict of guilty and judgment of sentence thereon. Defendant appealed.

*George J. Barco,* with him *Paul E. Allen* and *Barco & Barco,* for appellant.

*Raymond P. Shafer,* District Attorney, for appellee.

OPINION BY HIRT, J., January 17, 1956:

The defendant was convicted of perjury in the giving of false testimony in an action of divorce brought by him in the common pleas of Crawford County. He has appealed from the judgment of sentence.

Barbara Ellen Beddick separated from her husband, the appellant, on June 1953 and, taking their young son with her, went to her parents in Wheeling, West Virginia. Appellant came to Wheeling in July and a reconciliation was effected. He then was employed in Cleveland and in August 1953, at his request, she went to Cleveland and joined him there. They lived in a hotel room for about one week and then, about September 1, moved into a three room apartment at 1822 East 82nd Street in Cleveland. Appellant had signed the lease for the apartment; he also furnished it and he

paid the rent. As husband and wife they occupied the same bed in the one bedroom in the apartment. After his wife had left him in July appellant brought an action of divorce in Crawford County, and his wife had notice of it in Wheeling. But after the reconciliation he told her to ignore the divorce proceeding; that he was not going through with it and would discontinue the action. It was in reliance on these representations that she went to Cleveland to live with her husband there. Normal marital relations continued in Cleveland until November 7, 1953, when she first learned of the divorce which appellant had obtained in Crawford County by decree entered on October 21, 1953, in the same action brought by him in the previous July. She then left the appellant in Cleveland, taking her son with her, and went back to Crawford County to live.

The hearing in the divorce action was held in the law office of Stuart A. Culbertson, Esq., appellant's then attorney, in Meadville, on September 23, 1953. His wife had no notice of it. At the hearing, notwithstanding the fact that appellant was then living with his wife and son in Cleveland in a family relationship, he testified: (1) "I do not know where she (my wife) now lives or resides, but the last I knew she lived at 1027 Mt. De Chantal, Wheeling, West Virginia." (2) "I learned that she had taken the baby and gone to West Virginia, and she has never come back since and I do not know where she and the boy are." And further in answer to cross-interrogatories put to appellant by the master, he said (3) "I have not lived or cohabited with my wife since May, 1953" and (4) "I do not know where she resides but it is some place around Wheeling, West Virginia and she is trying to hide the boy." These are the alleged perjured statements as laid in the indictment. From the evidence at the trial of the appel-

lant on the charge it was clearly established that the above testimony was given by him and that it was false. The question in this appeal is whether the giving of this false testimony amounted to perjury under the circumstances.

F. G. Antoun, Esq., had been appointed master in the divorce action but he did not receive notice of his appointment until about 10 o'clock of the morning of September 23, 1953. He then immediately appeared in Mr. Culbertson's office where the hearing had been in progress for some time and he was present until the end of the hearing. Appellant at his urgent request had been allowed to testify beginning about 8 a.m. before the master appeared. And a record of his testimony was made by Mr. Culbertson's secretary directly on her typewriter. At the close of the hearing the defendant read the transcript of his testimony at the request of the master and in the oath then administered to him by the master he swore that the testimony which he had given in the case "is the truth, the whole truth and nothing but the truth." After having been sworn he also answered the two cross-interrogatories in the language as charged, and numbered 3 and 4 in the indictment.

There were procedural irregularities in the conduct of the divorce case but, contrary to appellant's contention, the hearing nevertheless was a judicial proceeding. In exercising powers delegated to him by the court, a master in general has the status of a judicial officer. 19 Am. Jur., Equity, §368. This court has recognized that "A master occupies, for the time being, a quasi judicial position, . . .": *Kolopen v. Kolopen*, 148 Pa. Superior Ct. 311, 25 A. 2d 569. A master derives his power from the court which appointed him. Under §66 of the Divorce Law of May 2, 1929, P. L. 1237, 23 PS §66, courts of common pleas were author-

ized to "adopt such rules and practice as may be necessary to carry this act into effect, and to regulate proceedings before masters, . . ." The hearing in the divorce case brought by the appellant was held in accordance with the Court Rules of Crawford County except for the irregularity in the taking of appellant's testimony *before* rather than *after* he was sworn by the master. In a prosecution for perjury, mere procedural defects in the course of a trial or hearing will not invalidate the proceeding. *Commonwealth v. Schindler,* 170 Pa. Superior Ct. 337, 86 A. 2d 151. Cf. 41 Am. Jur., Perjury, §23. It was to suit the convenience of appellant that his testimony was taken before the master appeared; he was in a hurry to get back to Cleveland. If he actually testified falsely it would be unconscionable to permit him to escape responsibility for the fraud, by adopting his present contention that the irregular procedure requested by himself and acceded to by his attorney voided the whole divorce proceeding.

In general an indictment for perjury must charge that the defendant swore falsely before a person having authority to administer an oath. Cf. 2 Wharton's Criminal Law, 12 Ed., §1551; §21 of the Act of March 31, 1860, P. L. 427, 19 PS §371. The indictment here avers that "Fred Antoun [was] the Master, duly appointed by the court of Common Pleas of Crawford County, to hear said Action in Divorce . . ." and that this appellant was sworn by him. A master, constituted a judicial officer by the court which appointed him, is clothed with the necessary authority, by virtue of his office, to administer an oath. And the averment in the indictment that the defendant swore falsely before a duly appointed master in divorce meets the requirement of the law in that respect. The court properly refused to quash the indictment.

We are unable to agree with appellant's contention that Barbara Ellen Beddick was an incompetent witness in testifying against him. At common law husband and wife were incompetent to testify against each other. *Canole v. Allen*, 222 Pa. 156, 70 A. 1053; *Ulrich's Case*, 267 Pa. 233, 109 A. 922. We have held that the reason for the rule of the common law, which forbade husband and wife to give testimony against each other, ceased on the death or divorce of one of the parties, except as to confidential communications. *Hayes's Est.*, 23 Pa. Superior Ct. 570. The disqualification that remains after the dissolution of the marriage is restricted to communications of a confidential nature. *Stewart v. F. A. North Co.*, 65 Pa. Superior Ct. 195. The above decree granting the divorce was entered on October 21, 1953. The testimony of Barbara Ellen Beddick did not relate to confidential communications between her and the appellant and when she testified at the trial of the perjury charge on February 19, 1954, the divorce decree had become a final judgment. No motion to vacate the decree was made within the term at which the decree was entered (Cf. *Fisher v. Fisher*, 74 Pa. Superior Ct. 538) and neither before nor after the close of the term was an appeal taken. The witness therefore was clearly competent; on this record she was not the appellant's wife when she testified against him. And her status and her competency are unaffected by the fact that later, on December 1, 1953, the court ruled the appellant to show cause why the decree of divorce should not be vacated, we assume because fraudulently obtained. The rule was still undisposed of on April 5, 1955, when appellant was sentenced and the decree then was still a final judgment.

As proof that statements, numbered 1 and 2 in the indictment, were made by the appellant, the master was allowed to refresh his recollection of the testimony in

the record which had been taken at the hearing, before the master arrived. We find no prejudicial error in the admission of this testimony. Mr. Culbertson's secretary, who made the record of appellant's testimony, testified that he so testified in response to questions put to him by his attorney. Moreover, appellant's mother testified that, on an oath administered to him by the master, he swore to the truth of all of the testimony given by him and that he signed his name to his testimony. The master properly was allowed to refer to the alleged perjured statements as a part of the testimony which the appellant, before the master, swore was true.

The appellant was well represented at the trial by counsel appointed by the court to defend him, and by the same counsel in the present appeal. We however are unable to find reversible error in this record.

Judgment of sentence affirmed and appellant is ordered to appear in the court below at such time as he may be there called, and that he be by that court committed until he shall have complied with his sentence or any part of it which had not been served at the time this appeal was made a supersedeas.